UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CHARLES DOWD,<br><br>       Plaintiff,<br><br>  -against-<br><br>DAREN DEMARCO, individually, and in his capacity as an officer of the New York City Police Department, KURT WEBER, individually, and in his capacity as an officer of the New York City Police Department, JOSEPH DIBARTOLOMEO, individually, and in his capacity as an officer of the New York City Police Department, JOSEPH REZNICK, individually and in his capacity as an officer of the New York City Police Department, and JOHN DOES of the New York City Police Department, the identity and number of whom is presently unknown,<br><br>       Defendants. | 17-Cv-8924 (SHS)<br><br>OPINION & ORDER |

SIDNEY H. STEIN, U.S. District Judge.

 This action is brought pursuant to 42 U.S.C. § 1983 by a former Assistant Chief of the New York Police Department, Charles Dowd, against NYPD internal affairs officers who allegedly maliciously subjected him to baseless ethical charges that he improperly accepted gifts from an outside vendor. Though Dowd was ultimately cleared of those charges after an administrative hearing, he claims that he was harmed by having to pay lawyers to defend him and by the continued presence of the departmental charges in his NYPD personnel file.

 The four named defendants are NYPD officers who are represented by the Corporation Counsel of the City of New York. Defendants previously moved to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6) and plaintiff amended his complaint in response. Defendants then moved to dismiss the amended complaint, again for failure to state claims upon which relief can be granted.

As set forth below, the Court agrees that plaintiff has failed to set forth viable claims for relief and therefore grants defendants' motion to dismiss the amended complaint.

## I.  Background

### A.  Factual Background

The following facts are as alleged in the first amended complaint ("FAC") and are assumed to be true for purposes of this motion.  Plaintiff Charles F. Dowd served thirty-four years in the New York Police Department and attained the rank of Assistant Chief, which is in "the top forty officers of the hierarchy of the NYPD," before retiring in May 2014.  (FAC, Doc. 25 ¶¶ 8–9.)  Defendants Sergeant Daren DeMarco, Lieutenant Kurt Weber, Deputy Inspector Joseph DiBartolomeo, and Deputy Commissioner Joseph Reznick are NYPD officers who served in the department's Internal Affairs Bureau ("IAB") in 2014.  (*Id.* ¶¶ 10–13.)  These four officers are sued in both their individual and official capacities, along with unidentified John Doe police officers alleged to be their co-conspirators.  (*Id.* ¶¶ 10–14.)

Beginning in March 2014, Dowd alleges, defendants conspired to subject him to baseless disciplinary charges falsely asserting that he improperly accepted gifts from Black Box Network Services, a vendor doing business with the NYPD.  (*Id.* ¶¶ 1–2, 16, 19.)  Assisted by an unspecified number of John Does, Reznick allegedly supervised the work of DiBartolomeo; DiBartolomeo supervised Weber; and Weber in turn supervised DeMarco, who was the "primary investigator in the matter."  Plaintiff identifies DeMarco as "the individual on which the entire investigation into Chief Dowd pivoted," but also alleges that all four defendants approved the filing of the disciplinary charges.  (*Id.* ¶¶ 10, 21; *see also id.* ¶¶ 11–14.)

The substance of those charges was that on specified dates from 2010 to 2013, Black Box paid the costs for Dowd's attendance at five meals, a golf outing, and a Yankees game – for an estimated total value to him of more than $780.  (*Id.* ¶ 21; Petition, Doc. 29-3 ¶ 6.)  In fact, however, Dowd possessed alibi evidence proving that he was out of state or otherwise occupied on six of these seven occasions.  And as for the seventh – a July 1, 2010 dinner at

Wolfgang's Steakhouse, at a cost of $342.87 per person – the department possessed insufficient evidence to prove either that Dowd attended the dinner or that, if he did, he failed to pay his fair share.  (FAC ¶ 27.)

Plaintiff cites various reasons to believe that defendants' investigation was conducted in bad faith.  According to Dowd, defendants either chose not to review or else maliciously suppressed available evidence – "NYPD documents such as duty rosters, time sheets, travel requests and approvals, EZ Pass records, official photographs, and telephone records" – that would have exculpated him by establishing his absence from the events in question.  (*Id.* ¶ 30; *see also id.* ¶¶ 17, 27.)  Defendant DeMarco, the lead investigator, did not interview either plaintiff or the Black Box salesmen implicated in the allegations, although two investigators from the U.S. Attorney's office did interview Dowd.  (*Id.* ¶¶ 16, 31–32.)  In addition, though DeMarco later testified under oath (at the administrative hearing described below) that he maintained a file recording the details of his investigation, the NYPD Legal Bureau denied the existence of any such file in response to a subpoena.  (*Id.* ¶ 31.)

When Dowd learned in March 2014 that he was under investigation in connection with these allegations, he twice sought unsuccessfully to meet with the police commissioner to discuss the matter.  In April 2014, at least one New York newspaper published an article implicating Dowd in alleged Black Box-related ethics violations by two of his subordinates; Dowd alleges that defendants leaked the story to the press.  Dowd then filed for retirement on May 1, 2014, effective thirty days later.  (*Id.* ¶¶ 18–19.)

Defendants brought departmental charges against Dowd in August 2014 and forwarded the charges to the New York Conflicts of Interest Board ("COIB" or "Board").  (*Id.* ¶¶ 19, 23.)  Dowd claims that defendants intentionally waited to file the charges until after his retirement, foreclosing the possibility of resolving the matter through an internal NYPD hearing – which would have spared him the "enormous" expenditure of legal fees for his own defense – and preventing him from challenging the departmental charges, which remain in his personnel file to this day.  (*Id.* ¶¶ 3, 19–20, 22, 44, 57.)

In January 2015, the COIB served Dowd with a notice of their "initial determination . . . that there is probable cause to believe [Dowd] violated provisions of Chapter 68 of the City Charter," which governs conflicts of interest. (Probable Cause Notice, Doc. 29-2; *see* FAC ¶ 23.) The Board gave Dowd twenty days to respond to the allegations before it would commence a hearing at the New York City Office of Administrative Trials and Hearings ("OATH") to determine whether the violations had in fact occurred. (FAC ¶¶ 23–24; Probable Cause Notice at 3.) Although Dowd responded to that first notice, the Board nonetheless served him in July 2015 with a Notice of Petition commencing formal proceedings, giving him thirteen days to answer the allegations or else be deemed to have admitted them in the subsequent OATH hearing. (FAC ¶¶ 24–26; Notice of Petition, Doc. 29-3 at 1–2.)

Dowd repeatedly characterizes these COIB charges as "criminal charges" or a "criminal prosecution," (FAC ¶¶ 2, 59; *see also id.* ¶¶ 1, 16–18, 26, 58), citing the provision in New York City Charter Section 2606(c) that a violator of the charter's conflicts-of-interest rules "shall be guilty of a misdemeanor." Hence, plaintiff asserts that any failure to respond to the COIB petition "would result in Chief Dowd being found guilty of a misdemeanor." (FAC ¶ 24.)

After Dowd hired counsel and presented evidence refuting the allegations against him, the administrative hearing judge recommended to the COIB that it dismiss the charges for lack of probable cause. (*Id.* ¶¶ 26–28.) The COIB agreed and Dowd was "acquitted" after the hearing. (*Id.* ¶¶ 4, 29.) However, the original departmental charges remain in plaintiff's permanent NYPD file – which "still reflect[s] that there are charges pending against him" – and Dowd alleges that as a result of his retirement he is "forbidden" from securing the removal of those charges from the file. (*Id.* ¶ 20; *see also id.* ¶¶ 4, 44, 69.) Due to this stain on his reputation, Dowd alleges, he has not subsequently obtained full-time employment, despite efforts to do so. (*Id.* ¶¶ 47, 53.)

Though Dowd claims that "Defendants had no other motive but to humiliate and embarrass" him, (*id.* ¶ 46), he hints darkly at an ulterior purpose with the allegation that "[a]t

all relevant times, the Conspirators were aware that the Police Commissioner, who had been a shareholder and director of a company affected by Chief Dowd's decisions over the years, had no affection for him." (*Id.* ¶ 15; *see also id.* ¶¶ 9, 17.)

**B.    Original Complaint and First Motion to Dismiss**

Dowd filed the original complaint in this action on November 15, 2017. That pleading asserted three claims against defendants pursuant to 42 U.S.C. § 1983 for (1) malicious prosecution, (2) conspiracy to deprive plaintiff of his constitutional rights, and (3) "injunctive relief." (Compl. ¶¶ 29–44.) Dowd asked the Court to order the NYPD to remove the charges from his personnel file and to award compensatory damages for his economic losses and reputational harms, along with punitive damages, fees, and costs. (*Id.* at 12–13.)

In January of this year, defendants moved to dismiss the complaint for failure to state a claim. Defendants argued that Dowd had failed to allege a deprivation of liberty implicating his Fourth Amendment rights, as required to state a claim for malicious prosecution, and that the conspiracy claim accordingly deserved dismissal due to the lack of any constitutional violation (or, alternatively, due to the intracorporate conspiracy doctrine's bar on conspiracy claims against officers in the same organization). (*See* Defs.' Original Mem., Doc. 24 at 1.)

**C.    Amended Complaint and Second Motion to Dismiss**

Dowd responded to defendants' motion by filing an amended complaint. The amended pleading added three new causes of action: malicious abuse of process, denial of due process in violation of the Fifth Amendment, and denial of due process in violation of the Fourteenth Amendment. (FAC ¶¶ 43–62.) As renumbered in the amended complaint, Dowd asserts the following six claims:

- Count I:     malicious prosecution
- Count II:    malicious abuse of process
- Count III:   Fifth Amendment due process violation
- Count IV:   Fourteenth Amendment due process violation
- Count V:    conspiracy to violate plaintiff's constitutional rights
- Count VI:   injunctive relief

Defendants moved to dismiss the amended complaint pursuant to Fed. R. Civ. P. 12(b)(6) and the Court heard oral argument on May 17, 2018.

## II. <u>Discussion</u>

### A. <u>Legal Standard</u>

On a Rule 12(b)(6) motion, the Court must accept the truth of the facts alleged in the complaint and draw all reasonable inferences in plaintiff's favor. *Wilson v. Merrill Lynch & Co.*, 671 F.3d 120, 128 (2d Cir. 2011); *Graham v. Prince*, 265 F. Supp. 3d 366, 376 (S.D.N.Y. 2017). However, "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Smith v. Local 819 I.B.T. Pension Plan*, 291 F.3d 236, 240 (2d Cir. 2002) (internal quotation omitted). To survive the motion, the complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). If plaintiff has "not nudged [his] claims across the line from conceivable to plausible, [his] complaint must be dismissed." *Twombly*, 550 U.S. at 570.

On a motion to dismiss, the Court will "not look beyond facts stated on the face of the complaint, . . . documents appended to the complaint or incorporated in the complaint by reference, and . . . matters of which judicial notice may be taken." *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016) (omissions in original) (internal quotation omitted). Judicially noticeable matters include "documents that are in the public record." *Vasquez v. City of New York*, No. 99-CV-4606, 2000 WL 869492, at *1 n.1 (S.D.N.Y. June 29, 2000); *see Hell's Kitchen Neighborhood Ass'n v. Bloomberg*, No. 05-CV-4806, 2007 WL 3254393, at *2 (S.D.N.Y. Nov. 1, 2007).

**B. Plaintiff's Malicious Prosecution Claim Fails to Allege a Deprivation of Liberty Implicating His Fourth Amendment Rights.**

Count I is a claim for malicious prosecution. "In order to prevail on a § 1983 claim against a state actor for malicious prosecution, a plaintiff must show a violation of his rights under the Fourth Amendment and must establish the elements of a malicious prosecution claim under state law." *Manganiello v. City of New York*, 612 F.3d 149, 160–61 (2d Cir. 2010) (citations omitted). Thus, although state law may allow recovery in tort for a broad array of injuries, a plaintiff alleging a constitutional violation must meet the further requirement to "show some deprivation of liberty consistent with the concept of 'seizure'" pursuant to the Fourth Amendment, in order "to ensure that the § 1983 plaintiff has suffered a harm of constitutional proportions—*i.e.*, a harm cognizable under § 1983." *Singer v. Fulton Cty. Sheriff*, 63 F.3d 110, 116 (2d Cir. 1995).[1]

Physical detention of the accused is the paradigm example of a seizure sufficient to support a malicious prosecution claim. *See id.* at 117 n.6. Following the reasoning of Justice Ginsburg's solo concurrence in *Albright v. Oliver*, some courts have also concluded that an individual nominally at liberty may be deemed "'seized' in the constitutionally relevant sense . . . so long as he is bound to appear in court and answer the state's charges." 510 U.S. 266, 279 (1994) (Ginsburg, *J.*, concurring). The United States Court of Appeals for the Second Circuit went some distance down this path in *Murphy v. Lynn*, holding that onerous pretrial restrictions on the liberty of a charged felon – forbidding interstate travel and requiring eight

---

[1] For this reason, plaintiff's citations to cases analyzing state-law claims of malicious prosecution outside of the Section 1983 context – viz., *Stampf v. Long Island R. Co.*, 761 F.3d 192 (2d Cir. 2014); *O'Brien v. Alexander*, 101 F.3d 1479 (2d Cir. 1996); *Rosario v. Amalgamated Ladies' Garment Cutters' Union*, 605 F.2d 1228 (2d Cir. 1979) – do not speak to the separate constitutional requirement of a Fourth Amendment seizure.

court appearances in one year – constituted a Fourth Amendment "seizure" for this purpose. 118 F.3d 938, 945–46 (2d Cir. 1997).[2]

That principle, so far as it goes, does not mean that every summons or requirement to appear in court suffices to ground a Section 1983 claim. Even in the criminal context, the Second Circuit distinguished *Murphy* in *Burg v. Gosselin*, holding that "the issuance of a pre-arrangement, non-felony summons requiring a later court appearance, without further restrictions, does not constitute a Fourth Amendment seizure." 591 F.3d 95, 98 (2d Cir. 2010). And without foreclosing the possibility altogether, the Second Circuit has deemed it "unlikely" that a civil or administrative proceeding "would implicate constitutional rights in a manner that would warrant redress under § 1983," at least where the charged individuals, "critically, were never taken into custody, imprisoned, [or] physically detained." *Washington v. Cty. of Rockland*, 373 F.3d 310, 316–17 (2d Cir. 2004); *see also Easton v. Sundram*, 947 F.2d 1011, 1017 (2d Cir. 1991) ("To our knowledge, no other court to have considered the question has held that a cause of action pursuant to § 1983 for malicious civil prosecution exists.").

In the present case, the only seizure alleged by Dowd is the requirement that he attend one administrative hearing to refute the disciplinary charges against him. (*See* FAC at 1 & ¶¶ 26, 32.) That allegation cannot meet the requirements arrayed above. In particular, plaintiff's claim runs headlong into the Second Circuit's holding in *Washington* that such facts cannot support a Section 1983 claim for malicious prosecution – even if, as here, "the disciplinary charges included offenses for which plaintiffs could have been criminally

---

[2] *See also Swartz v. Insogna*, 704 F.3d 105, 108–12 (2d Cir. 2013) (allowing a Section 1983 claim to proceed on the basis of criminal charges requiring three court appearances); *Jocks v. Tavernier*, 316 F.3d 128, 136 (2d Cir. 2003) (dicta that "the requirements of attending criminal proceedings and obeying the conditions of bail suffice"); *Rohman v. New York City Transit Auth.*, 215 F.3d 208, 216 (2d Cir. 2000) (recognizing a Fourth Amendment seizure where post-arrangement release conditions required five court appearances before criminal charges were dropped).

prosecuted had they been found guilty in the administrative proceeding." 373 F.3d at 316; *see also Rolon v. Henneman*, 517 F.3d 140, 147 (2d Cir. 2008) (affirming the dismissal of a similar claim by a police officer as "materially indistinguishable from *Washington*").

Dowd argues strenuously that this case is distinguishable because his failure to appear at the hearing would result, by operation of law, in his criminal conviction of a misdemeanor. (*See* Pl.'s Opp'n Mem., Doc. 28 at 13–14; Pl.'s Letter, Doc. 34; Pl.'s Reply Letter, Doc. 36.) The Court has reason to doubt that is so.[3] But even assuming that plaintiff is correct on this point, his claim is nonetheless barred by the clear holding of *Burg* that "the issuance of a pre-arraignment, *non-felony* summons requiring a later court appearance, without further restrictions, does not constitute a Fourth Amendment seizure." 591 F.3d at 98 (emphasis added). Plaintiff has failed to identify a cognizable Fourth Amendment seizure as required

---

[3] Dowd's argument rests on the provision in the New York City Charter's conflicts-of-interest chapter stating that "[a]ny person who violates section twenty-six hundred four or twenty-six hundred five of this chapter *shall be guilty of a misdemeanor* and, *on conviction thereof*, shall forfeit his or her public office or employment." New York City Charter § 2606(c) (emphases added). That language is at least equally susceptible of the interpretation that, as in *Washington*, violators of this provision "*could* have been criminally prosecuted," in a subsequent court case, "*if* found guilty in the administrative proceeding." 373 F.3d at 316 (emphases added).

Indeed, the very sources cited in plaintiff's post-argument submissions lend support to this reading over Dowd's. *See Dep't of Sanitation v. Maurice*, OATH Index Nos. 197–99/09, at 2 (Nov. 6, 2008) ("[T]he misconduct complained of and described in the charges would, *if proved in a court of appropriate jurisdiction*, constitute a crime." (emphasis added) (internal quotation omitted)); *id.* at 3–4 ("DePalma . . . was convicted *in criminal court* of violating Charter section 2604(b)(13) . . . ." (emphasis added)). This interpretation also makes better sense of the language in the COIB's probable cause notice to Dowd, which warned that "[t]he Board may impose monetary fines of up to Twenty-Five Thousand Dollars ($25,000.00) per violation," citing the same Section 2606, (Probable Cause Notice at 3), with no mention of the misdemeanor conviction that Dowd claims constituted the sword of Damocles over his head.

to state a Section 1983 claim for malicious prosecution.  The Court concludes that Count I fails to state a claim for relief.

### C.  Plaintiff's Malicious Abuse of Process Claim Fails to Allege Improper Use of the Disciplinary Charges After Their Issuance.

Count II alleges that defendants committed the tort of malicious abuse of process when they "initiated and filed charges in Plaintiff's permanent personal Police Department file over two months after Plaintiff retired, knowing when they were doing so, that Plaintiff would be procedurally barred from defending against those charges," and when they forwarded the charges to the COIB, "compel[ling] Plaintiff to appear at the COIB hearing and spend hundreds of thousands of dollars to defend himself."  (FAC ¶¶ 44–45.)

When a plaintiff brings such a claim pursuant to Section 1983, the courts "turn to state law to find the elements of the malicious abuse of process claim."  *Cook v. Sheldon*, 41 F.3d 73, 80 (2d Cir. 1994).  In New York,

> a malicious abuse of process claim lies against a defendant who (1) employs regularly issued legal process to compel performance or forbearance of some act (2) with intent to do harm without excuse or justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process.

*Id.* (citing *Curiano v. Suozzi*, 63 N.Y.2d 113, 116 (1984)).  "While malicious prosecution concerns the improper issuance of process, the gist of abuse of process is the improper use of process *after* it is regularly issued."  *Id.* (emphasis added) (internal quotation and alteration omitted); *see also Jones v. Maples/Trump*, No. 98-CV-7132, 2002 WL 287752, at *7 (S.D.N.Y. Feb. 26, 2002) ("[W]ithout an allegation that the process has been improperly perverted after its issuance, a claim of abuse of process must be dismissed, even though the defendant acted maliciously in initiating the process." (internal quotation omitted)), *aff'd*, 71 F. App'x 873 (2d Cir. 2003).

Dowd fails to plausibly allege any improper use of process subsequent to its issuance, as required to satisfy the first element.  The only such "process" identified in the amended complaint is defendants' *initiation* of the proceedings against him by filing NYPD disciplinary

charges and forwarding them to the COIB. But it is not enough to allege that "defendants acted maliciously in bringing the action," because "malicious motive alone . . . does not give rise to a cause of action for abuse of process." *Curiano*, 63 N.Y.2d at 117. "Rather, some other abuse of the [charges] after they were issued would have been necessary, such as the use of the [charges] to extort a payment or other concession." *Lopez v. City of New York*, 901 F. Supp. 684, 692 (S.D.N.Y. 1995); *see also Richardson v. New York City Health & Hosps. Corp.*, No. 05-CV-6278, 2009 WL 804096, at *16–17 (S.D.N.Y. Mar. 25, 2009). Because there is no such allegation in the amended complaint, the Court concludes that Count II fails to state a claim for malicious abuse of process.

### D.  Plaintiff's Due Process Claims Fail to Plausibly Allege the Deprivation of a Protected Liberty or Property Interest.

Counts III and IV claim that defendants deprived Dowd of liberty and property without due process, in violation of the Fifth (Count III) and Fourteenth (Count IV) Amendments. These claims, too, fail at the threshold. In the first place, "[t]he Fifth Amendment's Due Process Clause protects citizens against only federal government actors, not State officials." *Mitchell v. Home*, 377 F. Supp. 2d 361, 372 (S.D.N.Y. 2005) (citing *Dusenbery v. United States*, 534 U.S. 161, 167 (2002)). Count III must therefore be dismissed out of hand. Plaintiff appropriately concedes this point of constitutional law. (*See* Argument Tr. at 25.)

As to the Fourteenth Amendment due process claim in Count IV, "[t]he two threshold questions in any § 1983 claim for denial of procedural due process are whether the plaintiff possessed a liberty or property interest protected by the United States Constitution or federal statutes and, if so, what process was due before the plaintiff could be deprived of that interest." *Green v. Bauvi*, 46 F.3d 189, 194 (2d Cir. 1995). Dowd identifies two allegedly protected interests: a property interest in the money he was forced to expend on attorneys' fees to defeat the disciplinary charges against him, and a liberty interest in the ability to engage in future employment without the stigma of the charges in his NYPD file. (FAC at 1 & ¶¶ 1–3, 22, 32, 61.)

Plaintiff cites no authority for the proposition that the first of these allegations – the voluntary expenditure of attorneys' fees in one's defense – qualifies as the deprivation of a protected property right. "Property interests are not created by the Constitution, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law," *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538 (1985) (internal quotation omitted), and plaintiff identifies no legal source for a supposed entitlement to be free from the burden of conducting one's defense in an administrative proceeding. The only decision cited to support this argument is a district court case considering the plainly inapposite circumstance of correction officials withholding prisoners' wages. *See Webster v. Chevalier*, 834 F. Supp. 628, 631 (W.D.N.Y. 1993). Plaintiff next suggests creatively – but without a lick of support – that the attorneys' fees may be conceptualized as "one side of the coin" of the money he would otherwise have been forced to pay in fines and penalties if adjudged guilty of the charges against him. (Pl.'s Opp'n Mem. at 10.) Plaintiff offers no precedent for a due process claim based on the mere *possibility* of fines that were never imposed.

The courts have recognized the viability of some due process claims based on reputational harm resulting in the denial of future employment opportunities, the second type of deprivation alleged by Dowd. Under the Second Circuit's case law, defamation alone "is simply not enough to support a cognizable liberty interest," and "the deleterious effects which flow directly from a sullied reputation would normally also be insufficient" to ground a constitutional claim. *Valmonte v. Bane*, 18 F.3d 992, 1001 (2d Cir. 1994). However, some plaintiffs may proceed pursuant to the "'stigma plus' doctrine, which in limited circumstances provides a remedy for government defamation under federal constitutional law." *Sadallah v. City of Utica*, 383 F.3d 34, 38 (2d Cir. 2004) (citation omitted).

A stigma-plus claim requires a plaintiff to "show (1) the utterance of a statement 'sufficiently derogatory to injure his or her reputation, that is capable of being proved false, and that he or she claims is false,' and (2) a material state-imposed burden or state-imposed

alteration of the plaintiff's status or rights.' The state-imposed burden or alteration of status must be '*in addition* to the stigmatizing statement.'" *Id.* (citation omitted) (quoting *Doe v. Dep't of Pub. Safety ex rel. Lee*, 271 F.3d 38, 47 (2d Cir. 2001), *rev'd on other grounds*, 538 U.S. 1 (2003)). "This requirement has been met in most cases by dismissal from government employment," *Sacco v. Pataki*, 114 F. Supp. 2d 264, 271 (S.D.N.Y. 2000), *aff'd sub nom. Abramson v. Pataki*, 278 F.3d 93 (2d Cir. 2002), which is not at issue here in light of Dowd's retirement from the NYPD.

There are other ways to satisfy the "plus" requirement, however. In *Valmonte v. Bane*, the Second Circuit held that the placement of the plaintiff's name in a state registry of child abusers "does not simply defame [plaintiff], it places a tangible burden on her employment prospects," because the legal scheme provided that, "by *operation of law,* her potential employers will be informed specifically about her inclusion on the Central Register and . . . if they do wish to hire her, those employers are required by law to explain the reasons why in writing." 18 F.3d at 1001; *see also Doe*, 271 F.3d at 57 (onerous sex offender registration duties); *Finch v. New York State Office of Children & Family Servs.*, 499 F. Supp. 2d 521, 533–35 (S.D.N.Y. 2007) (state's failure to allow timely challenge to listing on child abuser registry).

In this case, the amended complaint fails to plausibly allege any "plus" factor as contemplated in the controlling cases. Dowd's pleading makes only the conclusory allegations that "[a]s a consequence of the Conspirators filing charges in Plaintiff's NYPD personnel file, Plaintiff was unable to procure full-time employment," and "[a]s a direct and proximate result of Defendants' actions, Chief Dowd has not obtained full-time employment." (FAC ¶¶ 47, 53.) But the Second Circuit in *Valmonte* specifically named "the impact that defamation might have on job prospects" as a "typical consequence of a bad reputation" generally incapable of supporting a due process claim on its own. 18 F.3d at 1001 (citing *Siegert v. Gilley*, 500 U.S. 226, 234 (1991)); *see also Sadallah*, 383 F.3d at 38 (such effects, "standing alone, do not constitute a 'plus' under the 'stigma plus' doctrine"). Dowd does not plausibly explain how the existence of records documenting the departmental charges

against him rises to the level of a "tangible burden" comparable to the elaborate and specific legal deficiencies imposed on registered sex offenders and child abusers.

For these reasons, the Court concludes that Counts III and IV fail to state due process claims upon which relief can be granted.

### E. Plaintiff's Conspiracy Claim Fails Because His Substantive Claims Cannot Stand and Because the Intracorporate Conspiracy Doctrine Bars It.

Count V alleges that defendants conspired to deprive him of his constitutional rights. But because defendant has not adequately pled any other claim for a violation of his constitutional rights – "the *sine qua non* of a § 1983 action" – his conspiracy claim necessarily fails as well. *Singer v. Fulton Cty. Sheriff*, 63 F.3d 110, 119 (2d Cir. 1995); *see also, e.g., Curley v. Vill. of Suffern*, 268 F.3d 65, 72 (2d Cir. 2001).

Count V is also barred entirely independently by the intracorporate conspiracy doctrine, which provides that "officers, agents and employees of a single corporate entity" – here, the New York Police Department – "are legally incapable of conspiring together." *Chamberlain v. City of White Plains*, 986 F. Supp. 2d 363, 388 (S.D.N.Y. 2013) (quoting *Hartline v. Gallo*, 546 F.3d 95, 99 n.3 (2d Cir. 2008)). Although the Second Circuit has not yet expressly held this doctrine applicable to Section 1983 suits, as it has for 42 U.S.C. § 1985, *see Herrmann v. Moore*, 576 F.2d 453, 459 (2d Cir. 1978), courts in this district have uniformly applied the rule to Section 1983 cases as well. In the words of then-Judge Mukasey, "[i]n the absence of controlling contrary authority, this court will continue to apply the intracorporate conspiracy doctrine to Section 1983 claims because the doctrine's logic is sound." *Anemone v. Metro. Transp. Auth.*, 419 F. Supp. 2d 602, 604 (S.D.N.Y. 2006); *see also Chamberlain*, 986 F. Supp. 2d at 388 (collecting cases).

An exception to the intracorporate conspiracy doctrine allows suits against "individuals within a single entity when they are pursuing personal interests wholly separate and apart from the entity." *K.D. ex rel. Duncan v. White Plains Sch. Dist.*, 921 F. Supp. 2d 197, 210 (S.D.N.Y. 2013) (quoting *Quinn v. Nassau Cty. Police Dep't*, 53 F. Supp. 2d 347, 360 (E.D.N.Y.

1999)).  Although Dowd seeks to claim the applicability of that doctrine, his argument is contradicted by the amended complaint itself, which affirmatively alleges that the acts of all defendants "were conducted within the scope of their official duties or employment."  (FAC ¶ 35; *see also id.* ¶ 56.)

Plaintiff therefore fails to plausibly allege a claim under the personal-interest exception to the intracorporate conspiracy doctrine, and his conspiracy claim fails as a matter of law regardless of the viability of his substantive claims.  *See, e.g., K.D.*, 921 F. at 210 ("[T]he Complaint does not allege that [defendants] were acting solely in their personal interests. Indeed, the Complaint alleges that [defendants] were 'on duty' and acting 'within the scope of their employment' at the time of the alleged conspiracies.  Therefore, Plaintiffs' conspiracy claims are also subject to dismissal . . . ." (citation omitted)); *Randle v. Alexander*, 960 F. Supp. 2d 457, 475 (S.D.N.Y. 2013) ("[T]he intracorporate conspiracy doctrine contains an important caveat: namely, that the actors involved be engaged in activities *within the scope* of their employment.").  The Court concludes that Count V fails to state a claim for conspiracy.

F.    **Because Plaintiff's Complaint Fails to Raise Any Substantive Claim for Relief, His Request for Injunctive Relief Also Fails.**

Count VI seeks injunctive relief, but is simply an additional prayer for relief and not a separate cause of action.  (FAC ¶¶ 68–70.)  In it, Dowd raises no new substantive arguments and asks simply that the Court order defendants to remove the charges from Dowd's NYPD file if they refuse to do so voluntarily.  (*Id.* ¶ 70.)  The Court concludes that Count VI fails to state a claim for relief and is simply a request for injunctive relief.

G.    **The Amended Complaint is Dismissed with Prejudice.**

"Although [Fed R. Civ. P. 15(a)(2)] requires that leave should be granted freely, it is within the sound discretion of the court whether to grant leave to amend."  *John Hancock Mut. Life Ins. Co. v. Amerford Int'l Corp.*, 22 F.3d 458, 462 (2d Cir. 1994) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).  Here, plaintiff has already had a full opportunity to amend his pleading to address the various deficiencies identified in defendants' first motion to dismiss, and he

has failed to do so adequately. In these circumstances, when "there is no indication that plaintiff[] could replead the complaint so as to establish" all elements necessary to support his claims, dismissal is properly granted with prejudice. *Chill v. Gen. Elec. Co.*, 101 F.3d 263, 272 (2d Cir. 1996); *see also, e.g., San Leandro Emergency Med. Grp. Profit Sharing Plan v. Philip Morris Cos.*, 75 F.3d 801, 815 (2d Cir. 1996).

## III. Conclusion

Dowd may well have suffered from the ordeal instigated by defendants' investigation, but "[n]ot every wrong committed at the hands of the government is cognizable as a constitutional violation." *Segal v. City of New York*, 459 F.3d 207, 209 (2d Cir. 2006). "It long has been clear that Section 1983 does not make of the Fourteenth Amendment a font of tort law to be superimposed upon whatever systems may already be administered by the States." *Hirschfeld v. Spanakos*, 909 F. Supp. 174, 179 (S.D.N.Y. 1995) (internal quotation omitted).

For the foregoing reasons, defendants' motion to dismiss the amended complaint is granted with prejudice.

Dated: New York, New York
June 12, 2018

Sidney H. Stein, U.S.D.J.